UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROMAN GUANA GARZA, | ) | 1:02-cv-5579 OWW SMS |
| | ) | |
| Petitioner, | ) | MEMORANDUM DECISION |
| | ) | GRANTING PETITION FOR |
| v. | ) | HABEAS CORPUS |
| | ) | |
| JAMES E. TILSON, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

This matter is before the Court following the September 14, 2007 decision of the Court of Appeal, which vacated and remanded this case for an evidentiary hearing upon its finding on the petition for writ of habeas corpus, that: "If the facts in Garza's affidavits are true, then a juror sat at his trial who was biased against him, a situation that gives rise to structural error under the law of this Circuit. *See Dyer v. Calderon*, 151 F.3d 970, 973 & n.2 (9th Cir. 1998) (en banc).

The Ninth Circuit went on to find that Garza's alleged facts, if true, would entitle him to a new trial. *Alberni v. MacDaniel*, 458 F.3d 860, 873 (9th Cir. 2006). The case was remanded for an evidentiary hearing.

///

# I. **PROCEDURAL HISTORY**

Petitioner, Roman Garza, was convicted after trial by jury of rape, forcible penetration and forcible oral copulation of V.J.  Petitioner was sentenced to ten years in state prison.  In accordance with the Court of Appeals' remand, an evidentiary hearing was held July 24-25, 2008 followed by the parties' supplemental briefing.

Based on the evidentiary hearing, the following findings of fact are entered:

1.  The juror in controversy, Joan Robinson, based on her inconsistent, argumentative and conflicting answers, is found to be an incredible witness, who lied about whether her daughter Michelle Dockery worked at Petitioner's Los Tejanos Restaurant.

2.  Juror Joan Robinson knew, at the time she was questioned as a prospective juror during voir dire, that her daughter, Michelle Dockery, had worked for and been fired by Petitioner after approximately three days' employment at Los Tejanos Restaurant.

3.  Juror Joan Robinson knew that her daughter, Michelle, was on probation or parole when Michelle was fired by Petitioner and that Michelle needed to work as a condition of her release.

4.  Juror Joan Robinson had, prior to her selection as a juror, once called Petitioner on the phone to request that Petitioner re-hire her daughter at his restaurant.

5.  Juror Joan Robinson knowingly lied during the evidentiary hearing regarding whether she had picked up and dropped off her daughter Michelle for work at Petitioner's restaurant.

6. Juror Joan Robinson intentionally failed to disclose during voir dire that members of her immediate family, including Michelle, a son, and two former husbands, all had criminal records.

7. Juror Joan Robinson intentionally failed to disclose during voir dire that she had a brother who once worked in law enforcement for the CHP.

8. Juror Joan Robinson was aware and intentionally failed to disclose in voir dire, that her daughter, Michelle, was once the victim of a sexual assault.

9. Based on these evidentiary findings, it is proved that juror Joan Robinson is unreliable, was purposefully untruthful in answers to questions during voir dire, and her material failures to disclose facts relevant to issues in the underlying trial, caused prejudice to Petitioner as juror Joan Robinson was an impliedly, and actually, biased witness.

10. Based on the totality of her testimony, the reasonable inference is drawn that juror Joan Robinson had animus toward Petitioner based on his firing of her daughter Michelle, Michelle's prior sexual victimization, and Petitioner's rejection of juror Robinson's direct telephonic request to Petitioner to re-hire her daughter, after he fired her, to comply with conditions of Michelle's parole and/or probation.

11. This juror's direct affirmative misrepresentations and material omissions to disclose were on subjects that bore directly on juror Joan Robinson's bias toward Petitioner and the nature of the crimes and on her ability to serve as a fair and impartial juror in Petitioner's case.

3

12. It is more likely than not that juror Robinson lied about having picked up and dropped off her daughter at work at Los Tejanos.

13. Juror Robinson's intentional failure to disclose the extensive criminal histories of her daughter Michelle Dockery, her son, and two ex-husbands during voir dire at Petitioner's trial, prevented an intelligent and informed exercise of peremptory challenges.

14. Based on the totality of circumstances, juror Robinson was not fair and unbiased.

## II.  STANDARD OF REVIEW

This case is governed by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"); 28 U.S.C. § 2254(d). The standard for review is whether the judgment of the State Court was contrary to and involved an "unreasonable application" of "clearly established Federal law." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). In the Federal habeas corpus context, a state trial court's finding that a juror is impartial only violates a defendant's constitutional right to a fair trial where the trial court's finding amounts to "manifest error." *Patton v. Yount*, 467 U.S. 1025, 1031 (1984).

Although the default rule is that where the record has not been developed in the state action, an evidentiary hearing should only be held under specified circumstances, the Federal Court of Appeals has already determined that an evidentiary hearing was required. A Federal Court may grant relief on the basis of a state court evidentiary ruling only if the ruling itself amounts

4

to a constitutional violation. *Chia v. Cambra*, 360 F.3d 997, 1003-07 (9th Cir. 2004). The issues here presented are: (1) the legal effect of the Court's factual finding that juror Robinson made material misrepresentations and omissions during voir dire questioning and that she was not a fair and impartial juror. The Ninth Circuit has already ruled in this case that under such circumstances the error is structural. The second issue is the nature and extent of the habeas court's authority to grant relief.

A.   STRUCTURAL ERROR - ENTITLEMENT TO HABEAS RELIEF

The Sixth Amendment guarantees a criminal defendant a fair trial, which includes the right to a verdict by an impartial jury. *Smith v. Phillips*, 455 U.S. 209, 217 (1982); *Fields v. Brown*, 503 F.3d 755, 766 (9th Cir. 2007). A court confronted with a colorable claim of juror bias must undertake an investigation of the relevant facts and circumstances. *Remmer v. United States*, 347 U.S. 227, 230 (1954). As evidentiary hearing has been conducted.

The bias or prejudice of a single juror may violate the right to a fair trial. *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998) (bias is presumed where a juror lies to secure a seat on the jury). "Voir dire examination serves to protect [the right to an impartial jury] by exposing possible biases, both known or unknown, on the part of potential jurors." *McDonnough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) (a party must demonstrate a juror failed to answer honestly a material question on voir dire and that a correct response would

5

have provided a valid basis for a challenge for cause); *McDonnough Power* at p. 555. *See also, Williams v. Taylor*, 529 U.S. 420, 444 (2000) (a defendant may establish by evidentiary hearing that a perspective juror who did not tell the truth on voir dire was not impartial). Here, if juror Robinson's prior knowledge of and contact with Petitioner had been known, appropriate follow-up voir dire questions could have been propounded.

Implied bias, presumed as a matter of law, exists when a case includes subject matter that has been experienced by a juror which raises an inherent "potential for substantial emotional involvement, adversely affecting impartiality." *Tinsley v. Borg*, 895 F.2d 520, 527-28. *Tinsley* holds that if a juror or her close relatives were personally involved in a situation involving a similar fact pattern to the charged crime, bias must be presumed. Factors giving rise to presumed or implied bias include: (1) "where the juror is apprised of such prejudicial information about the defendant that the Court deems it highly unlikely that [s]he can exercise independent judgment even if the juror states [s]he will; (2) "the existence of certain relationships between the juror and the defendant;" (3) "where a juror or his[er] close relatives had been personally involved in a situation involving a similar fact pattern;" and (4) "where it is revealed 'that the juror is an actual employee of the prosecuting agency, . . . a close relative of one of the participants in the trial . . . or . . . a witness or somehow involved in the transaction." *Tinsley* at p. 528. Implied bias also exists "where repeated lies in voir dire imply that the juror concealed material facts in order to

6

1 secure a spot on the particular jury." *Fields v. Brown*, 503 F.3d 755, 770 (9th Cir. 2007). *See also, Morgan v. Illinois*, 504 U.S. 719, 727 (1992).

Here, Juror Robinson's daughter worked for Petitioner, was fired after three days, and Petitioner rejected Juror Robinson's entreaty to re-hire her daughter to avoid the adverse effect of violating a condition of the daughter's parole or probation. Juror Robinson had four family members who had adverse criminal law experiences with the criminal justice system. All of this was undisclosed, but required probing examination.

The *Dyer* case observed that where a juror "lies materially and repeatedly in response to legitimate inquiries about her background, [it] introduces destructive uncertainties into the process." *Dyer* at 982-83. "A juror who tells major lies creates a serious conundrum for the fact-finding process. How can someone who herself does not comply with the duty to tell the truth, stand in judgment of other people's veracity?" Juror Robinson's lies about not knowing Petitioner, driving Michelle to his restaurant, her relatives' criminal convictions, and her professed absence of knowledge of anything concerning the case bore materially on her impartiality and lack of honesty. She was unworthy of trust and should have been excused for cause had the facts been known.

The doctrine of implied bias is defined in *Crawford v. United States*, 212 U.S. 183, 196 (1909):

> Bias or prejudice is such an illusive condition of the mind that it is most difficult, if not impossible, to always recognize its existence, and it might exist in the mind of one (on account of his relations with one of the parties) who was quite positive that he had no

7

> bias, and said that he was perfectly able to decide the question wholly uninfluenced by anything but the evidence. The law therefore most wisely says that with regard to some of the relationship which may exist between the juror and one of the parties, bias is implied and evidence of its actual existence need not be given.

An implied bias is "a bias attributable in law to the prospective juror regardless of actual partiality." *United States v. Wood*, 299 U.S. 123, 134 (1936).

Contrary to the State's argument that the law is unsettled or that the doctrine of implied bias pertaining to jury dishonesty during voir dire is a "new rule" under *Teague v. Lane*, 489 U.S. 288 (1989), the *Dyer* case found: "Implied bias may indeed be the single oldest rule in the history of judicial review . . . so deeply embedded in the fabric of due process that everyone takes it for granted." *Dyer* at p. 984. *Fields*, 503 F.3d at 771 ("We agree with Fields that the implied bias doctrine existed before 1984; we so held in *Dyer*.") Here, Petitioner's conviction was final for *Teague* purposes on January 16, 2002, the date the California Supreme Court denied certiori in his direct appeal. As of that time, the rule of implied bias was well-established.

Respondent argues that the habeas court must defer to the state court's evidentiary findings. However, no state court made any evidentiary findings. *Nunes v. Mueller*, 350 F.3d 1045, 1055 (9th Cir. 2003).

Implied bias has here been established by the findings of dishonesty made at the evidentiary hearing ordered by the Court of Appeal. The participation of a biased juror is not harmless; as the Circuit Court directed, if present, the error constitutes

is structural, requiring a new trial without a showing of actual prejudice. *Dyer*, 151 F.3d at 973; *Arizona v. Fulminante*, 499 U.S. 279 (1991). The bias or prejudice of even a single juror violates the right to a fair trial. *Id.* at 973. Based on this well-established law and the findings regarding the juror's categorical dishonesty and implied bias, Petitioner is entitled to habeas relief.

Respondent's argument, that it is not clearly established in Federal law whether the presence of one biased juror amounts to Federal constitutional error and that the State Appellate Court's rejection of Mr. Garza's juror misconduct claim, was not an unreasonable application of any clearly established law is contrary to the State Court of Appeals' opinion which held that a single juror who conceals relevant facts or gave false answers during voir dire undermines the jury selection and amounts to misconduct. *People v. Garza*, No. F034696 (5th Dist. Ct. App. Oct. 29, 2001), Slip Op. at p. 9. The State Court of Appeal did not reject Petitioner's juror misconduct claim that one biased juror is constitutionally acceptable, but rather, rejected Petitioner's juror misconduct claim on the ground it was not "substantiated." Slip Op. at pp. 12-14. The State Court finding of no substantiation under *Ylst v. Nunnemaker,* 501 U.S. 797, 803 (1991), is not entitled to deference under the AEDPA, as there was none. The Ninth Circuit implicitly found the State Court of Appeal decision to be an unreasonable application of clearly established Federal law because there was a failure of proof absent an evidentiary hearing on the juror bias claim. The Ninth Circuit expressly held that Petitioner "made a reasonable

9

attempt, in light of the information available at the time, to investigate and pursue his claim of juror bias in State Court" and that "the juror in question . . . and the California Courts, bear the responsibility for any underdevelopment of these matters." *Garza v. Tilton*, No. 06-15126 (9th Cir. Mar. 1, 2007), Slip Op. at pp. 2-3.

Supreme Court precedent establishes that although a conflict between Ninth Circuit law and State law is insufficient, *Van Tran v. Lindsey*, 212 F.3d 1143, 1155 (9th Cir. 2000); *Duhime v. Ducharne*, 200 F.3d 597, 600 (9th Cir. 2000):

> This does not mean that Circuit case law is never relevant to a habeas case after AEDPA. [Circuit] cases may be persuasive authority for purposes of determining whether a particular state court decision is an "unreasonable application" of Supreme Court law, and also may help . . . determine what law is "clearly established."

Respondent cites no authority that a criminal defendant does not have a Federal constitutional right to twelve honest and impartial jurors. Respondent's contention that *Dyer* is not good law as a pre-AEDPA case is unavailing in light of *Fields v. Brown*, 503 F.3d 755, 771 (9th Cir. 2007), which confirms *Dyer* is good law, post-AEDPA, noting: "The implied bias doctrine existed before 1984," and continues to be viable. *Fields* at p. 771.

Petitioner correctly notes that the State Appellate Court opinion, the last reasoned decision, unreasonably applied well-established Federal law that the Sixth Amendment guarantees a criminal defendant the right to a verdict by impartial jury. *Smith v. Phillips*, 455 U.S. 209, 217 (1982). After being confronted with a colorable claim of juror bias, the State Court undertook no investigation of the underlying facts and

10

circumstances.  *McDonnough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 555 (1984).  When adverse relationships exist between a juror and a party, here Joan Robinson and Petitioner Garza, and the juror's daughter, Michelle, and Petitioner, bias is actual. *Crawford v. United States*, 212 U.S. 183 (1909).  Implied bias is bias attributable in law regardless of actual impartiality. *United States v. Wood*, 299 U.S. 123, 134 (1936).  The Ninth Circuit has already announced this is the law in this case. (Juror misconduct in voir dire constitutes structural error).

Finally, the habeas court is bound by the Court of Appeals' rejection of Respondent's arguments that AEDPA deference was owed the State Court decision, by the Federal Appellate Court's finding that if facts alleged by Petitioner "if true, would entitle him to a new trial."  *Garza*, Slip Op. at p. 3; *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991) (under the "law of the case" doctrine, one panel of an appellate court will not reconsider questions which another panel has decided on a prior appeal in the same case; *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988) (the habeas court is precluded from reexamining an issue previously decided by a higher court in the same case).

### III.  AUTHORITY FOR HABEAS REMEDY

Petitioner argues that under 28 U.S.C. § 2243 the Court may "dispose of the matter as law and justice require."  The "law and justice" language is taken from the 1867 Habeas Corpus Act and was understood to confer judicial authority "of the most comprehensive character."  *Ex Parte McCardle*, 73 U.S. 318, 325-26

11

(1867).  This case has been prosecuted under § 2254(d). Respondent argues that the only remedy for habeas corpus is a conditional release order, as the essence of the writ is to vindicate the rights of a person unlawfully held "in custody." *See Herrera v. Collins*, 506 U.S. 390, 403 (1993).  A habeas remedy "should put the defendant back in the position he would have been in," if the constitutional violation never occurred. *Nunes*, 350 F.3d at 1057.  Petitioner seeks to vacate his conviction, conditional upon his receiving a new trial within 120 days of the grant of the petition for writ of habeas corpus.  As Petitioner is on parole, he is technically "in custody." *Jones v. Cunningham*, 371 U.S. 236, 240-43 (1963) (parole satisfies the "in custody" requirement); *see also Chaker v. Crogan*, 428 F.3d 1215, 1219 (9th Cir. 2005).  Petitioner also suffers the prejudice and disabilities of his prior felony convictions.

Respondent rejoins that "although the Supreme Court recognized in *Tumey v. Ohio* that a trial before a biased judge presents structural error, it has not applied this principal to trials by biased jurors, much less in cases where there is only potential bias." *Sims v. Rowland*, 414 F.3d 1148, 1153 (9th Cir. 2005).  Respondent claims this establishes that in AEDPA-governed cases, there is no clearly established Supreme Court precedent holding that the presence of a biased juror requires automatic reversal.  Nonetheless, the Ninth Circuit has said in this case that the presence of one biased juror cannot be harmless and is structural error, requiring a new trial, which necessarily is a reversal of the convictions.  Respondent ignores *Fields*, which affirms *Dyer* in a post-AEDPA case.

12

Respondent's analysis of whether the presence of juror Robinson was harmless or structural error by testing for actual prejudice, is misplaced, and not required in this Circuit after *Fields* and based on the law of this case pronounced by the Court of Appeals. A harmless error inquiry asks whether the juror's presence on the jury had a "substantial injurious effect or influence in determining the jury's verdict." *Inthavong v. Lamarque*, 420 F.3d 1055, 1059 (9th Cir. 2005) (quoting *Brecht v. Ahbramson*, 507 U.S. 619, 637 (1993). "Actual prejudice" includes a showing that it would have been objectively unreasonable for the State Court to find the alleged error harmless beyond a reasonable doubt. *Fry v. Pliler*, 127 S.Ct. 2321, 2327 (2007). It is necessary "but not sufficient" to show it would have been objectively unreasonable for a State Court to find that the "effect" of the challenged violation was "comparatively minimal," so that it did not "contribute to the verdict(s) rendered" in any constitutionally offensive sense. *Yates v. Evatt*, 500 U.S. 391, 405 (1991), *overruled on other grounds*, *Estelle v. McGuire*, 502 U.S. 62, 72 n.4 (1991).

Respondent argues that the trial evidence was overwhelming as the victim promptly reported the rape and a sperm sample was collected from the victim's vagina. The sample was compared with DNA samples provided by the victim's boyfriend and Petitioner. Forensic testimony proved that the sperm was Petitioner's DNA. The victim testified at trial and provided detailed testimony about how Petitioner raped her in his office at his restaurant. The jury deliberated one hour and twenty minutes and convicted Petitioner of all three crimes. Under the law of the Ninth

13

1  Circuit, this analysis cannot change the result that in view of
2  the implied error based on juror dishonesty, that the case must
3  be retried.

A.   **REMEDY**

Respondent argues that the sole authorized remedy on Federal habeas is a release from parole. Petitioner contends that he is entitled to a new trial, or in the event the State elects not to re-try him, that his judgment of conviction be vacated.

Respondent cites AEDPA language concerning the purpose of the writ to address the legality of a person in "custody." Petitioner asserts "a Federal Court has 'broad discretion in conditioning a judgment granting habeas relief.'" Federal habeas courts are authorized under 28 U.S.C. § 2243, to dispose of habeas corpus matters "as law and justice require." In construing § 2243 and its predecessors, the Ninth Circuit has repeatedly stated that Federal Courts may delay the release of a successful petition in order to provide the State an opportunity to correct the constitutional violation by the Court. *Nunes v. Mueller*, 350 F.3d 1045, 1056-57 (9th Cir. 2003). The grant of a conditional writ is "tailored to the injuries suffered from the constitutional violation" without "unnecessarily infring[ing] on compelling interests." *United States v. Morrison*, 449 U.S. 361, 364 (1981); *quoted in Nunez v. Mueller*, 350 F.3d at 1057. This petition was instituted under § 2254 of the AEPDA, which does not include the "as law and justice require" language relied on by Petitioner. Conceptually, any habeas remedy "should put the defendant back in the position he would have been in if the Sixth

14

1 Amendment violation never occurred." *Nunes v. Mueller*, 350 at
2 1057; *United States v. Blaylock*, 20 F.3d 1458, 1466 (9th Cir.
3 1994) (the Fifth Amendment due process right to a fair trial
4 amplifies the Sixth Amendment objective to protect the integrity
5 of the entire trial process).

### IV. CONCLUSION

Petitioner has completed his prison sentence and is in technical custody by virtue of his parole status. Petitioner's custody status is unlawful and the writ of habeas corpus must be GRANTED. This effectuates the discharge of Petitioner from parole. The Ninth Circuit has already directed in its remand that if the petition is granted, Petitioner must be retried because such juror error is structural. The District Court cannot ignore the express language of the Court of Appeal's remand order.

Petitioner's petition for writ of habeas corpus is GRANTED.

Respondent shall retry Petitioner within 120 days following the electronic service of this Order.

If the relevant prosecuting authority elects not to retry Petitioner, Respondent shall take such actions as are reasonably necessary to comply with the Ninth Circuit's remand order impliedly reversing his convictions.

IT IS SO ORDERED.

Dated:   December 24, 2009                /s/ Oliver W. Wanger
                                          UNITED STATES DISTRICT JUDGE